FILED
2012 APR 30 P 4:20
CLERK
U.S. BANKRUPTCY
COURT - PGH

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| BROWNSVILLE PROPERTY CORPORATION, INC. | : : | CASE NO. 10-21959-TPA |
| *Debtor* | : | CHAPTER 7 |
| | | |
| FALCK PROPERTIES, LLC, | : | Adv. No. 12-2054-TPA |
| *Plaintiff* | : : | Related to Document Nos. 6, 13 |
| v. | : : | |
| PARKVALE FINANCIAL CORPORATION, a/k/a PARKVALE BANK, a Pennsylvania Financial Institution, | : : : : | |
| *Defendant* | : | |

*Appearances:*   David Fuchs, Esq., for the Plaintiff
Michael A. Shiner, Esq., for the Defendant

**MEMORANDUM OPINION**

This adversary proceeding originated as an action filed by Falck Properties, LLC ("Falck") against Parkvale Financial Corporation ("Parkvale") in the Allegheny County Court of Common Pleas on December 29, 2011. *See Falck Properties, LLC v. Parkvale Financial Corporation*, No. GD 11-027202 ("the State Court Case"). On January 27, 2012, Parkvale filed a *Notice of Removal* to the District Court, together with a motion asking the District Court to refer the matter to this Court. On February 8, 2012, the Hon. Terrence F. McVerry of the District Court signed a consent order which the Parties had submitted agreeing that the case would be referred to

1

this Court for decision, while reserving the right of the Parties to litigate all issues relating to the removal and the underlying case.

Presently before the Court are two preliminary motions.  First, a ***Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)*** ("Motion to Dismiss"), filed by Parkvale at Doc. No. 6.  Second, a ***Motion to Remand Proceedings to the Court of Common Pleas of Allegheny County or in the Alternative, Abstain from Hearing the Case*** ("Motion to Remand"), filed by Falck at Doc. No. 13.  The two *Motions* have been fully briefed and argued by the Parties and are ripe for decision.  For the reasons that follow, both of the *Motions* will be denied.

*FACTUAL AND PROCEDURAL BACKGROUND*

Because of its importance to resolution of the issues raised in the *Motions*, it is necessary to go into the background in some detail.  Brownsville Property Corporation ("BPC" or Debtor) was a non-profit corporation that filed a Chapter 7 bankruptcy petition on March 22, 2010.  The sole asset of BPC was real estate located at 125-127 Simpson Road, Brownsville, Pa., on which was operated a facility known as Brownsville Tri-County Hospital, and a medical office building.  This real property (hereinafter "the Property") consisted of Fayette County Parcel Nos. 30-04-0202 and 30-04-0202-T0-0.

The BPC bankruptcy is part of a cluster of what may be termed the "Brownsville cases."  The entity which operated Brownsville Tri-County Hospital was Brownsville Health Solutions, Inc. a/k/a Brownsville Health Services Corporation ("BHS").  BHS is itself a debtor in

an associated Chapter 11 bankruptcy case that was filed on February 18, 2009, and subsequently converted to Chapter 7. *See In re Brownsville Health Solutions, Inc.*, Case No. 09-20998-TPA. Brownsville General Hospital, Inc. ("BGH"), which has also filed a case under Chapter 7 of the Bankruptcy Code, was an earlier version of the entity that operated this same medical facility, and in fact formerly owned the Property before it was conveyed to a newly-created BPC. *See In re Brownsville General Hospital, Inc.*, Case No. 06-20253-TPA, filed on January 24, 2006. Finally, West Point Health Corporation owned some condominium units and leaseholds in buildings which were part of this same medical facility. *See In re West Point Health Corporation*, Case No. 10-22146-TPA, filed under Chapter 7 of the Bankruptcy Code on March 29, 2010. The same Chapter 7 Trustee ("Trustee") is administering the BPC, BHS, and West Point bankruptcy estates. In the BGH case, a plan was confirmed and a Plan Administrator appointed ("Plan Administrator").

The primary secured creditor in the BPC bankruptcy was Parkvale, which held a first and second lien position on the Property pursuant to mortgages granted in 2007 as part of a loan transaction involving BPC and other Brownsville entities. The loan went into default in the pre-petition period, and in 2009 Parkvale caused a default judgment to be entered in Fayette County against BPC in the amount of $1,415,903.34. Parkvale had scheduled the Property to be sold at a sheriff sale when the filing of the BPC case intervened to stay such sale.

On May 14, 2010, Parkvale filed a motion to dismiss the BPC bankruptcy case for cause under *11 U.S.C. §707(a)* as having not been filed in good faith, and in the alternative sought relief from stay so the sheriff sale could proceed. *See* Doc. No. 36 in the main BPC case.[1] The

---

[1] Hereinafter, all document number references are to the docket in the main BPC case unless otherwise noted.

details of the allegations in that motion and the response thereto are not germane for present purposes[2] but it is of significance to note that the Court entered an Order on August 18, 2010, granting the motion in part and directing that the BPC property be sold by November 15, 2010, with Parkvale to be paid in full out of the sale proceeds. *See* Doc. No. 104. That same Order also provided that if the Property was not sold by the November 15th deadline, then the BPC bankruptcy would be dismissed and Parkvale could proceed with a sheriff sale on November 18, 2010. The Trustee attempted to sell the Property at a public auction in September 2010, but there were no bids made. On October 15, 2010, a further Order was entered which, *inter alia*, amended the August 18th Order to provide that the case would not be dismissed if a motion to sell the Property were filed with the consent of Parkvale prior to the November 18th sheriff sale permitted by the prior order. *See* Doc. No. 144.

On November 10, 2010, the Trustee entered into a 'binding letter of intent" with Falck whereby Falck agreed to buy the Property (along with a separate condominium unit located at 104 Simpson Road and owned by BHS) for a price of $1.8 million. On November 12, 2010, the Trustee filed an *Expedited Motion for Order Approving Sale of (i) All Real Property of the Debtor Free and Clear of Liens, Claims, Encumbrances and Interests Outside the Ordinary Course of Business, and (ii) Granting Related Relief* ("Sale Motion"), Doc. No. 146. The *Sale Motion,* which was not filed with Parkvale's consent, proposed that the sale to Falck be approved, with a closing

---

[2] To give a very brief summary, the BHG bankruptcy Plan Administrator had obtained a $6,000,000 judgment lien against BPC through pursuit of a fraudulent transfer theory in connection with the transfer of the Property to BPC. This lien was junior to Parkvale's mortgages. Parkvale alleged in the motion to dismiss that the Plan Administrator unsuccessfully attempted to have the Parkvale mortgages subordinated to the BGH lien, and when that failed, the Plan Administrator allegedly "conspired and colluded to have this bankruptcy case [i.e., the BPC case] filed in order to manufacture a forum for his ongoing efforts to challenge the validity of Parkvale Bank's mortgages against the Debtor."

to occur on or before the later of 75 days after Court approval of the sale, or January 31, 2011, that Falck tender payment of $100,000 in hand monies to Parkvale and that no further contingencies be recognized. The Trustee asked that the *Sale Motion* be heard before the scheduled November 18, 2010 sheriff sale.

Parkvale filed an objection to the *Sale Motion*. While it complained about the "last second" nature of the *Sale Motion* and various other aspects of the proposed sale, Parkvale said it would be willing to consent to the sale if certain conditions were met, including the closing to occur by December 31, 2010 and the $100,000 of hand money to be immediately paid to Parkvale. *See* Doc. No. 153.

An expedited hearing on the *Sale Motion* was held on November 17, 2010. Counsel for Parkvale stated at the time that his client would be willing to agree to a January 31, 2011 closing deadline for the sale to Falck if the non-refundable deposit was increased to $180,000. The Court then issued an Order providing for the payment of $180,000 in hand money to Parkvale by November 25, 2011 ($150,000 of this to come from Falck, and $30,000 from the Plan Administrator in the BGH bankruptcy), such to be non-refundable unless on or before November 30, 2011, the BPC Trustee discovered he could not convey good title to the Property, or Falck was not ultimately the successful bidder for the Property. *See Order* dated November 17, 2010, Doc. No. 158.

A further hearing on the *Sale Motion* and possible auction was scheduled for December 1, 2011. At that time an order was entered approving the sale to Falck, subject to the condition that the closing had to occur on or before January 31, 2011. A failure to close by the deadline would mean that the approval was automatically withdrawn and Parkvale could proceed

5

with a sheriff sale on the Property, tentatively scheduled for February 10, 2012. *See* Doc. No. 179. On December 21, 2011, a further order was issued on consent of the Parties resolving a gas lease issue connected with the Property, and again confirming the January 31st deadline for closing on the sale to Falck. *See* Doc. No. 193.

The Court heard nothing further about the matter by the January 31st deadline and assumed that a closing on the Property had occurred. However, on February 6, 2011 Falck filed an *Emergency/Expedited Motion for Extension of Sale Closing or in the Alternative Emergency Motion for Rescission* ("Emergency Motion") at Doc. No. 200. The *Emergency Motion* represented that, by agreement of the Parties, the closing deadline had been extended to February 9, 2012, one day prior to the scheduled sheriff sale. It further represented that subsequent to the December 21, 2011 Order, two new issues had come up that were interfering with a closing. First, Falck alleged that on January 20, 2011, it learned that the Property was not zoned for commercial use, but rather for residential, which significantly lowered the appraised value of the Property and jeopardized financing.[3] Falck alleged that it had filed a petition seeking to have the zoning for the Property changed, but it would take some time for that process to be completed. Second, Falck alleged that it discovered there were unpaid real estate taxes of $242,000 on the Property, and it was engaged in negotiations with the proper local authorities to try to resolve that matter. Falck asked either that the closing date be extended for a "reasonable time" or that the sale contract be rescinded and its deposit refunded on the basis of "mutual mistake" (on the theory that both sides incorrectly assumed the Property was zoned commercial and had negotiated based on that assumption).

---

[3] The *Sale Motion* had represented that Falck's offer to buy the Property was not subject to any financing contingency.

6

Perhaps not surprisingly, Parkvale filed a response to the *Emergency Motion* strongly objecting to the relief being requested. *See* Doc. No. 295. Parkvale asserted that Falck was simply guilty of inadequate due diligence and that the December 1, 2010 and December 21, 2010 Orders were final and controlling. Parkvale represented that it had been skeptical of Falck's ability to close even back at the November 17, 2011 hearing, but that repeated assertions had been made to it and the Court that Falck could close, and do so by January 31, 2011. Parkvale said it had agreed voluntarily to extend that deadline to February 9, 2011, but would not agree to any further extension.

A hearing on the *Emergency Motion* was held on February 9, 2011. At that time, the Court advised the Parties that it had reviewed the *Emergency Motion* and was prepared to deny it, but would prefer if the Parties could come to some agreement to resolve matters. Counsel for Parkvale then made a proposal that the February 10th sheriff sale be permitted to proceed, but that if Parkvale was the successful bidder at that sale, it would give Falck an exclusive option to purchase the Property on the same terms as provided in the *Sale Motion*, with any closing to occur by a firm, March 26, 2011 deadline. This proposal was agreeable to Falck, and was memorialized by the Court in an Order of the same date, *see* Doc. No. 206, which included the following:

> If no closing occurs by this deadline [*i.e.*, March 26, 2011], Falck shall have no further rights with respect to the Property except as may be agreed to by Parkvale Bank or any future owner of the property.

The February 9th Order also denied Falck's alternative request for a rescission, and included the following two provisions:

> (6) No further motions seeking an extension of time for a closing on the sale of the property will be entertained by the Court.

> (7) The Court will retain jurisdiction over this and any other related matter so as to address any other issues that may arise.

*See also, Transcript of Proceeding* dated Feb. 9, 2011, 36:15-16, 63:17, *et. seq.* (Doc. No. 216) The Court heard nothing further about the matter from any of the Parties until the removal of the State Court Case to this Court in the form of the matters presently at issue.

### *STATE COURT COMPLAINT*

In the State Court Complaint, Falck sets forth two counts against Parkvale: Count I for breach of contract and Count II, for unjust enrichment. A jury trial demand is included. Falck alleges that its plan was to purchase the Property and develop it for use as student housing and for medical offices. Complaint at ¶13.[4] Falck initially believed the Property was zoned commercial, but at some point discovered that it was actually zoned residential, with the operation of the medical facility having been a pre-existing, non-conforming use. *Id* at ¶¶8-11. After recounting the highlights of what transpired in this Court regarding the proposed sale (as described above in more detail in this *Opinion*), the Complaint picks up with events occurring subsequent to the February 9, 2011 Order. *See Id.* at ¶¶22, *et. seq*.

The gist of Falck's breach of contract claim appears to be that Parkvale refused to agree to refrain from interfering with Falck's pursuit of a zoning appeal unless Falck paid Parkvale an additional $50,000 in non-refundable hand money, and when Falck refused to do so, Parkvale successfully moved to quash that appeal. Falck is seeking damages for the alleged breach of

---

[4] A copy of the Complaint which Falck filed initiating the State Court Case is found as part of the *Appendix* to the *Notice of Removal.*

contract, including loss of the hand money it paid, maintenance expenses for the Property that it paid, fees and costs incurred with attempting to close on the Property, and the loss of anticipated income. *Id.* at ¶35. There is no explicit allegation in the Complaint as to when the "contract" being sued upon was created, or what its exact terms were, though the February 9, 2011 Order is attached as "Exhibit E" to the document. The unjust enrichment claim is based upon the same facts and appears, in essence, to be an alternative theory in case the breach of contract claim fails.

### *DISCUSSION*

Although the *Motion to Dismiss* was chronologically filed first in this case, from a legal and logical standpoint, the Court finds that it must first address the *Motion to Remand*, because if that request is granted the case must be returned to the Allegheny County Court of Common Pleas for further proceedings. *See, e.g.*, *In re Enron Corp. Sec., Derivative & "ERISA" Litigation*, 2005 WL 6220721 *1 (S.D. Tex. 2005); *Powell v. Miraglia*, 2004 WL 2452024 (N.D. Tex. 2004) (citing *Leroy v. Great W. United Corp.*, 442 U.S. 173, 180 (1979) for the proposition that subject matter jurisdiction is "fundamentally preliminary").

#### *Motion to Remand*

Parkvale removed the State Court Case to federal court pursuant to *28 U.S.C. §§1334* and *1452* and *Fed.R.Bankr.P. 9027*. *Section 1452(a)* provides in relevant part:

> (a)  A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

*28 U.S.C. §1452(a)*. Parkvale contends that this requirement is met because the State Court Case filed by Falck "arises under or is related to the bankruptcy case of BPC." *See Notice of Remand* at ¶1. Parkvale further contends that the action is a core matter under *28 U.S.C. §157(b)(2)(A),(G),(N), and (O)*. Respectively, these are matters concerning the administration of the estate, motions to terminate annul, or modify the automatic stay, orders approving the sale of property, and other proceedings affecting the liquidation of the assets of the estate.

The grounds raised by Falck in the *Motion for Remand* are: (1) that the case is non-core and not related to the BPC bankruptcy case; (2) permitting the removal to stand will interfere with Falck's right to a jury trial; (3) this Court lacks the authority to enter a final order in the case under the decision of *Stern v. Marshall*, __ U.S. __, 131 S. Ct. 2594 (2011)[5]; and, (4) even if it has jurisdiction to hear the case, this Court must abstain from doing so. In its response, Parkvale asserts that the Complaint filed by Falck is "nothing more than a dispute over the Bankruptcy Court's Sale Orders thinly disguised as state law causes of action," and it thus is a core matter within the Court's "arising under" jurisdiction. Parkvale contends that the Falck complaint is "squarely rooted" in what happened in this Court, and is in effect a collateral attack on this Court's orders concerning the sale.

---

[5] The *Motions* in the present case were argued at the same time as similar motions in a somewhat related adversary wherein Falck has sued the real estate broker and two agents who were involved in the sale of the Property. *See Falck Properties, L.L.C. v. Walnut Capital Real Estate Services, Inc.*, Adv No. 12-2029. The *Walnut Capital* matter was argued first and at the very outset of his presentation, Counsel for Falck stated that Falck was going to "back away from" the *Stern v. Marshall* argument because of his reading of the subsequent cases was to the effect that *Stern* was being interpreted to go towards whether a bankruptcy court may issue a final order or a report and recommendation. *See Audio Transcript of Proceeding* dated April 2, 2012, 10:06:27 A.M., *et seq*. From the context in which this statement was made, it is apparent to the Court that this withdrawal of the *Stern* argument applies to the present case as well as to the *Walnut Capital* matter. Nevertheless, for the sake of completeness, this Court will address the *Stern* argument in this *Opinion*.

Upon a motion for remand, the removing party bears the burden of demonstrating that removal was proper. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). The removing party thus bears the burden of proving that the federal court has jurisdiction. *Id.* Removal statutes are to be strictly construed, with any doubts resolved in favor of remand. *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992). After careful consideration of the arguments of the Parties, the Court concludes, without any significant doubt, that Parkvale has sufficiently demonstrated that this Court does have jurisdiction to hear this case. In so concluding, the Court finds that the gravamen of Falck's action, as set forth in its Complaint, is so interwoven with and inseparable from the various orders this Court has previously entered in connection with the would-be sale ("Prior Orders")[6] of the Property to Falck, as to squarely fall within the Court's well-recognized power to interpret and enforce its own orders. *See, e.g., Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009).

The allegations set forth in the Complaint demonstrate that Falck's claims are substantially, if not totally, dependent on this Court's Prior Orders. With respect to the breach of contract claim, the only contract between Falck and Parkvale that is evident from the allegations in the Complaint is the one that was reached in the presence of the Court and memorialized as part of the February 9, 2011 Order. *See Complaint* at ¶¶ 19-20, 30-35. The February 9th Order is attached as Exhibit E to the Complaint, and is in fact the only writing attached to or referred to in the

---

[6] The Prior Orders referred to have previously been identified in this *Memorandum Opinion* and include: *Order* dated November 17, 2010 at Document No. 158; *Order* dated December 1, 2010 at Document No. 179; *Order* dated December 21, 2010 at Document No. 193; and, *Order* dated February 9, 2011 at Document No. 206.

11

Complaint setting forth the terms of the contract.[7] The Complaint seeks only monetary damages for the alleged breach of contract, and all of the items mentioned in the Complaint are either directly covered by Prior Orders related to the sale, or flow from the Orders.

The unjust enrichment claim is similarly dependent on the Prior Orders. The benefits which Falck alleges to have conferred upon Parkvale were all done pursuant to the Prior Orders of this Court, and resolution of that claim will inevitably require resort to those Prior Orders.

No one disputes that the Court had the jurisdiction to enter the Prior Orders concerning sale of the Property, and the Court itself finds that such Prior Orders represented core matters pursuant to *28 U.S.C. §157(b)(2)(N)* and perhaps other subsections of 157(b)(2) as well.[8] Resolution of the Complaint filed by Falck will necessarily involve the interpretation of the Prior Orders, and therefore is itself a core matter. *See, e.g. Travelers Indem., supra, In re Marcus Hook*

---

[7] In its written response to the *Motion for Remand*, and at the subsequent oral argument, counsel for Falck argued that the breach of contract claim was only intended to cover Parkvale's breach of an alleged oral agreement that the Parties entered into after the February 9, 2011 Order. This does not change the Court's conclusion for several reasons. First, in deciding the *Motion for Remand* the Court is limited to a consideration of the allegations as set forth in the Complaint. *See, e.g., Malesovas v. Sanders*, 2005 WL 1155073 (S.D. Tex. 2005) (under the well-pleaded complaint rule, the plaintiff is the master of his complaint). Counsel's arguments to the contrary cannot change the fact that there is simply no reasonable way to discern the existence of a separate, post-February 9th agreement, let alone the terms and conditions thereof, based on the allegations in the Complaint. (In fact, if anything, the allegations in the Complaint appear to negate the existence of any post-February 9th agreement. *See Complaint* at ¶¶ 23-25). Second, even assuming there was some sort of post-February 9th agreement between the Parties, it is far from clear that it should be treated as a stand-alone contract capable of supporting a cause of action totally independent of the Court's Prior Orders, as opposed to a modification of the agreement reached before the Court and therefore necessarily involving interpretation and enforcement of those Prior Orders. Third, in any event, the relief which Falck is seeking in the Complaint is inconsistent with Counsel's argument since the vast majority of the items of damage listed relate to payments/benefits made pursuant to the Prior Orders.

[8] *Clark v. Chrysler Group, L.L.C.*, 2010 WL 4486927 (E.D. Pa. 2010), involved a similar situation as here because the court was faced with adjudicating rights as between parties established by a prior sale order. The court noted that the case did not require it to issue an order approving the sale of property, only to interpret a prior order to that effect. Thus the court found it to be "not entirely clear" if the case fell squarely within *Section 157(b)(2)(N)*, but nevertheless found it to be core based on the general definition of the term. *See also, In re River Entm't Co.*, 2012 WL 1098570 (Bankr. W.D. Pa. March 30, 2012) where the court found that the interpretation of a prior consent order was a core proceeding pursuant to *Section 157(b)(2)(A) and (O)*.

*Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991), *In re Allegheny Health Educ. & Research Found.*, 383 F.3d 169, 176 (3d Cir. 2004), *In re Trico Marine Servs., Inc.*, 450 B.R. 474, 482 (Bankr. D. Del. 2011), *In re River Entm't Co.*, 2012 WL 1098570 (Bankr. W.D. Pa. March 30, 2012).  Thus, the first argument raised by Falck in the *Motion for Remand* lacks merit.

The next argument raised by Falck is that, if allowed to stand, the removal will interfere with the jury trial demand it made in the Complaint.  The right to a jury trial is certainly an important one, which the Court takes seriously, but on the facts of the present case  remand is not compelled for that reason.  First, the Court agrees with Parkvale that there is a significant issue whether Falck has previously waived any right to a jury trial in this matter.

It is, of course, well-recognized that a party may waive the right to a jury trial by invoking the equitable jurisdiction of a bankruptcy court.  *See, e.g. Langencamp v. Kulp*, 498 U.S. 42, 44-45 (1991) (creditor which filed proof of claim brought itself within equitable jurisdiction of bankruptcy court and waived right to jury trial).  The exact contours of when such a waiver occurs are not clear, and the Court need not attempt to determine at this time whether Falck has effected a waiver here.  Nevertheless, there is ample basis for finding it may have done so, given Falck's extensive, voluntary involvement in the sale process before this Court, including its own action in seeking the assistance of this Court by filing the *Emergency Motion* that directly led to the February 9, 2011 Order.  On multiple occasions during the hearing on that *Motion* the Court expressly stated that it was going to retain jurisdiction over the sale of the Property – with no objection by Counsel for Falck.  *See Transcript of Proceeding* dated Feb. 9, 2012, 36:15, *et. seq.*; 42:9, *et. seq.*  Such lack of objection might also be viewed as an implicit waiver of a jury trial right concerning resolution of any dispute stemming from the Order.

Second, and in any event, even if Falck does enjoy a jury trial right in this matter, that of itself is not a sufficient ground for remand. Bankruptcy courts may conduct a jury trial in at least some core matters. *See, e.g., In re Visteon Corp.*, 2011 WL 1791302 (D. Del. 2011). Furthermore, even if this is not such a matter, other courts faced with the argument being made by Falck here have noted that a bankruptcy court may always hear matters through the pretrial stage, subject to the case then being tried in District Court in front of a jury if necessary. *See, e.g., In re Carriage House Condominiums, L.P.,* 415 B.R. 133, 148 (Bankr. E.D. Pa. 2009). The Court thus finds no merit in the jury trial argument for remand.

The third argument raised by Falck for remand is that under the decision in *Stern* this Court lacks the authority to enter a final judgment in this matter.[9] This same issue was addressed very recently by the Hon. Jeffrey Deller of this Court in *In re River Entm't Co.*, *supra*. In that case, under facts strongly analogous to those here, Judge Deller rejected the argument that *Stern* prevented him from entering a final order. He gave two reasons for his conclusion. First, he found that *Stern* did not apply because resolution of the matter before him was entirely dependent on his interpretation and enforcement of his own prior order and not dependent on the adjudication of an independent state law cause of action. Second, he found that even if *Stern* applied, both of the parties to the dispute could, and did, effectively consent to the entry of final judgment by the court.

This Court agrees with the extensive analysis provided in *River Entertainment,* finds it to be equally applicable in the present case, and sees no need to repeat the details here. The Court

---

[9] As indicated previously, *see n. 5, supra,* it appears Falck has withdrawn this argument, but the Court will nevertheless address it.

thus concludes that *Stern* does not prevent it from entering a final order based upon any lack of constitutional authority to do so. Even if at first blush it did appear that such authority was lacking, the extensive involvement of the Parties in the ongoing litigation process involving the Property, and Falck's failure to raise any objection to the Court's retention of authority to adjudicate disputes arising from the failed sale of the Property, constitutes implicit consent that would overcome the principle announced in *Stern*.[10]

The final argument raised by Falck is to the effect that even if this Court has jurisdiction to hear and decide this case, it should abstain from doing so and send the case back to the state court. Falck first argues for the application of mandatory abstention under *28 U.S.C. §1334(c)(2)*. If the Court concludes that mandatory abstention is not required, Falck argues that the Court should nevertheless exercise its discretion to abstain and equitably remand pursuant to *28 U.S.C. §§1334(c)(1)* and *1452(b)*. Each of these arguments will be addressed in turn.

The mandatory abstention statute provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

*18 U.S.C. §1334(c)(2)*. In *Stoe v. Flaherty*, 436 F.3d 209 (3d Cir. 2006), the court held that this

---

[10] Further confirmation of the lack of any merit to Falck's *Stern* argument comes from the consent order submitted by Falck and Parkvale to the District Court whereby both Parties agreed that the case should be referred to this Court for decision. *See* Doc. No. 11 in the Adversary Proceeding. Having consented to such referral, Falck will not now be heard to argue that this Court lacks the authority to render a decision in the case.

15

provision is operative in the bankruptcy context, and that all five of the following factors must be present for mandatory abstention:

> (1) the proceeding is based on a state law claim or cause of action; (2) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11, (3) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (4) an action "is commenced" in a state forum of appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction.

436 F.3d at 213. A review of these factors need only get to the second one before Falck's argument is clearly dispelled. The Court has previously found that the claims as set forth in the Complaint are core matters, therefore they arise in or arise under *Title 11* and are not merely related to the BPC bankruptcy case. In addition, there is significant doubt that Falck can show the first factor either. Although the claims in the Complaint are denominated as being for breach of contract and unjust enrichment, which are on their face descriptive of state law causes of action, the Court's previous comments in this *Memorandum Opinion* should make clear that it views the real substance of the claims as involving the interpretation and effectuation of its Prior Orders. The Court thus finds that mandatory abstention does not apply.

Turning to the possibility of discretionary, or permissive, abstention, the relevant statute provides:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

16

*28 U.S.C. §1334(c)(1). See also, 28 U.S.C. §1452(b)* (court to which case has been removed may remand on any equitable ground).

Various courts have propounded various lists of factors which a court should consider in determining whether to permissively abstain. *See, e.g., In re Legates,* 381 B.R. 111 (Bankr. D. Del. 2008) (list of 12 non-exclusive factors). However, an overriding consideration of this Court in reaching a decision on permissive abstention is that abstention is "an extraordinary and narrow exception ... justified only where resort to state proceedings clearly serves an important countervailing interest." *Lichtenfels v. Electro-Motive Diesel, Inc.*, 2010 WL 653859 *3 (W.D. Pa. 2010) (quoting *Carriage House*, *supra*). The *Liechtenfels* court went on to state that once a federal court is determined to have jurisdiction it has a "virtually unflagging obligation" to exercise such jurisdiction.

The Court does not see how the present case could by any stretch meet this demanding standard for permissive abstention. Falck has identified no discernable interest of justice to be served by abstaining, and the state law interests which would be respected or served by abstention are minimal given that the claims proffered by Falck are so enmeshed with what happened previously in this Court, which was a proceeding under federal, not state, law. The Court therefore declines to exercise its discretion to permissively abstain in this matter.

For all of the above reasons, the *Motion for Remand* must be denied and the case will remain in this Court. Discussion now turns to the *Motion to Dismiss* filed by Parkvale.

*Motion to Dismiss*

Parkvale's first argument is that the Count I of the Complaint should be dismissed because it fails to sufficiently allege the existence of a contract between Parkvale and Falck. The second Parkvale argument is that Count II of the Complaint for unjust enrichment should be dismissed because all actions were done pursuant to court order. Parkvale argues that unjust enrichment is essentially an equitable doctrine, and that there could not have been anything unjust about the payments made by Falck or benefits received by Parkvale if they were done pursuant to court orders. Parkvale's third argument is that the Complaint represents a collateral attack, or end run on bankruptcy court orders, and must be dismissed. Parkvale's final argument is that Falck lacks standing to pursue any claim because the sheriff's sale cut off whatever rights it may have had in the Property.

There is no need at this time to go into a discussion of these points. At the hearing on the *Motion to Dismiss* the Court made known its view that the Complaint is not sufficiently pled. However, rather than dismiss all or part of the case at this point, the Court indicated that it would give Falck an opportunity to file an Amended Complaint. The *Motion to Dismiss* will therefore be denied, without prejudice.

An appropriate *Order* follows.

Dated: April 30, 2012

_____
Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case Administrator to serve:
Robert O Lampl, Esq.      Robert Bernstein, Esq.
Michael A. Shiner, Esq.   2200 Gulf Tower
                          Pittsburgh, PA 15219
Robert Slone, Esq.
223 South Maple Avenue    Richard Parks, Esq.
Greensburg, PA 15601      One Oxford Centre, 38th Floor
                          Pittsburgh, PA 15219

18